## K. B. NELSON v. EDWARD F. BERKNER.[1]

### February 8, 1918.

### No. 20,683.

**Vendor and purchaser — fraud — judgment notwithstanding verdict denied.**

1. In this action to recover what was paid on a land purchase contract, alleged to have been induced by the alleged false and fraudulent representations of the defendant, the court rightly denied the motion for judgment in defendant's favor notwithstanding the verdict.

**Same — questions for jury.**

2. Misrepresentation of acreage of the cultivated portion as well as the distance to the schoolhouse were for the jury, notwithstanding the fact that plaintiff had seen the farm.

**Same — evidence of soil and value admissible.**

3. No assignment of error reaches the misrepresentation that the farm was as good as any in the county, and upon that issue it was not error to receive evidence as to the character of the subsoil and market value of the farm.

**Same — evidence of promises at variance with written contract.**

4. Evidence of fraudulent promissory representations made with no intention to keep them and solely for the purpose of inducing another to enter a contract may be proven though at variance with the written contract.

**Same — rescission of contract.**

5. But such representations are not grounds for rescission when the written contract, to the promisee's knowledge, reveals the falsity of the promise, for he cannot then be said to have relied thereon in entering the contract.

[1] Reported in 166 N. W. 347.

**Same.**

> 6. If, however, such a promise is based upon false representations in respect to existing facts, made in connection with the promise, it affords a ground for rescinding the contract induced thereby.

**Assignment of error.**

> 7. Defendant is not in position to assign error upon the submission of an issue withdrawn from the jury.

Action in the district court for Brown county to recover $4,153.50 paid on a contract for the purchase of a farm. The answer alleged that prior to making the agreement plaintiff had full opportunity to examine the farm and the soil and did so on several occasions, and made his agree-ment with full knowledge of all facts pertaining thereto, and went into possession and farmed the land during the year 1916 and derived the benefit therefrom in crops and produce to the value of at least $2,000; that defendant made no misrepresentations of any kind in the sale of the farm. The reply alleged the crop raised in 1916 did not exceed in value $1,000. The case was tried before Olsen, J., who when plaintiff rested denied defendant's motion to dismiss the action, at the close of the testimony denied his motion for a directed verdict of no cause of action, and a jury which returned a verdict for $2,494.26. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Pfaender & Erickson,* for appellant.

*Albert Hauser,* for respondent.

HOLT, J.

Plaintiff, claiming to have rescinded the contract for the purchase of a farm from defendant because of the latter's fraud, brought this action to recover the part of the purchase price paid. The verdict was for plaintiff. Defendant appeals from the order denying his motion in the alternative for judgment notwithstanding the verdict or a new trial.

Plaintiff, a farmer tenant from Iowa, was induced by defendant's agent to come to Brown county, Minnesota, in the fall of 1915, to look at farms in the vicinity of Sleepy Eye with a view to purchasing. He was shown defendant's farm of 197 acres, among others. He did

not become interested. A few weeks thereafter defendant sent an agent down to bring him back. He came to Sleepy Eye, and, the same afternoon, was taken by defendant to this farm, and to another not far from it. In the morning he decided to again examine the farm in question. Defendant took him there in an autobmobile. He returned to Iowa and notified defendant and his agent that he would not invest. Shortly thereafter defendant went to Iowa, found plaintiff in his home, and persuaded him to buy the farm. A contract evidencing the terms of sale was executed, it bears date October 26, 1915. Therein it was agreed that $24,000 should be paid for the farm, $3,000 of which was to be paid upon the execution of the contract and $21,000 on or before March 1, 1926; with interest at 5 per cent, payable annually. It was also provided that in case plaintiff failed to make the payments the contract might be terminated at the election of defendant, in which case the payments made thereunder should be retained by defendant in satisfaction of the damages sustained by the breach. Plaintiff paid the $3,000 as agreed.

The misrepresentation pleaded and submitted. to the jury related to the number of acres under cultivation; the distance to the schoolhouse; the worth of the farm as compared with others in Brown county, and the promise that, in case plaintiff could not make a success of farming the land the first year, the $3,000 paid with interest should be refunded. These issues were submitted in a clear, concise and legally accurate charge which is not challenged. But by motion for judgment notwithstanding the verdict, and by proper objections and motions to strike out testimony bearing upon the different misrepresentations alleged, except the one whether the farm was as good as others in the county, and exceptions taken to the rulings, defendant preserved his right to assign errors thereon in this court.

That the motion for judgment notwithstanding the verdict was rightly denied will appear from the conclusions reached upon the errors assigned on the rulings at the trial.

We are of opinion that the evidence upon the alleged misrepresentation of the acreage under cultivation in the 120-acre tract lying north of the road passing through the farm, made a fair question for the jury. Although plaintiff had been upon the land three times before the con-

tract was made, and admitted that he could fairly well judge acreage, it is to be remembered that at neither of the times when he visited the farm did he entertain any marked intention to buy. Therefore when he came to the point of buying, and not being where he could again make an investigation as to matters appearing of importance to him, it is not to be wondered at that he was uncertain as to the area of plow land and should make inquiry. Nor is it unreasonable that he should then have a right to rely upon statements of defendant, the owner, in reference thereto. That there was about 40 acres less plowland in the 120 acre tract than represented was certainly a material misrepresentation. We are not inclined to follow Van Horn v. O'Connor, 42 Wash. 513, 85 Pac. 260, it not being in accord with our own decisions of Stearns v. Kennedy, 94 Minn. 439, 103 N. W. 212; Lang v. Merbach, 96 Minn. 431, 105 N. W. 415.

What has been said concerning the representations in relation to the acreage of the plow land, applies to those relating to the distance to the school. It was for the jury to determine whether plaintiff understood, and had the right to understand, that the distance stated was from the dwelling house to the schoolhouse; if not, there was no misrepresentation in this respect.

No assignment of error directly questions the propriety of submitting to the jury whether defendant represented the farm to be as good as any in Brown county. Upon this issue it cannot be held that samples of the soil from the farm were erroneously received. The same may be said as to the evidence of value. It is plain that the representation related to the worth and adaptation of the land for farming purposes—that it was as good for general farming as that of other farms in the county. As bearing on the truth or falsity of that proposition, the kind of soil and subsoil was important. And the market value, in the opinion of those qualified to judge and having knowledge of soil conditions, tends to prove whether this farm was as good as other farms. It was for the jury to say, under all the circumstances, whether this alleged misrepresentation was mere trade talk, or made and understood as a material statement upon which plaintiff could rely in entering the contract.

The chief attack upon the rulings of the trial court arises out of a refusal to sustain objections to evidence tending to establish fraudulent

promissory statements and not granting defendant's motion to strike out the testimony received upon that issue. As a general rule unfulfilled promises as to future acts or events support neither an action for deceit nor avail as grounds for rescinding a contract induced by such promises. But there is ample authority to sustain the proposition that a promise as to a future act, made with no intention of keeping it, and solely to induce another person to enter a contract, is a legal fraud which gives such person the right to rescind. See cases cited in note to Cerny v. Paxton & Gallagher Co. 10 L.R.A.(N.S.) 640; Mutual Reserve Life Ins. Co. v. Seidel, 52 Tex. Civ. App. 278, 113 S. W. 945; Braddy v. Elliott, 146 N. C. 578, 60 S. E. 507, 16 L.R.A.(N.S.) 1121, 125 Am. St. 523. This is the rule in this state. Albitz v. Minneapolis & Pac. Ry. Co. 40 Minn. 476, 42 N. W. 394; Hodsden v. Hodsden, 69 Minn. 486, 72 N. W. 562; McElrath v. Electric Inv. Co. 114 Minn. 358, 131 N. W. 380; Cox v. Edwards, 120 Minn. 512, 139 N. W. 1070; Edward Thompson Co. v. Schroeder, 131 Minn. 125, 154 N. W. 792.

In the Albitz case the promissory representation upon which the decision was rested contradicted no provision in the contract, while here it is claimed that the promise to pay back the $3,000 with interest is inconsistent with the written stipulation that any payments made should be retained by defendant in case plaintiff defaulted. But the rule of evidence that parol testimony may not be received to contradict a written agreement, or to add to or modify its terms, is subject to the exception that, where the fraudulent or false representation of the one party procured the other party's signature, the representation may be proven for the purpose of annulling or rescinding the contract, no matter how variant with its terms. In Edward Thompson Co. v. Schroeder, supra, the Chief Justice said: "The point that defendant is precluded from showing the fraud by reason of the clause in the contract that no representations had been made except as stated in the contract is disposed of by the case of General Electric Co. v. O'Connell, 118 Minn. 53, 136 N. W. 404." It ought not to make any difference on this proposition whether the fraudulent statements relate to the present or to the future.

The civil code of California (section 1572)[1] declares a promise made with no intention to keep it an actual fraud. This accords with what

[1] [2 Kerr (1907).]

had been held to be the law in this state in the absence of a statute, at
least for the purpose of rescinding a contract induced by such promis-
sory statements. In Langley v. Rodriguez, 122 Cal. 580, 581, 55 Pac.
406, 68 Am. St. 70, a written contract was entered into whereby Rod-
riguez agreed to sell his crop of raisin grapes for two cents per pound,
payments to be made upon delivery of the grapes. He did not deliver;
and when sued for breach of contract the defense was made that the
purchaser, to induce Rodriguez to sign the contract, promised to ad-
vance $350 of the purchase price to enable Rodriguez to pick and cure
the grapes, and that said promise was made fraudulently with no inten-
tion of keeping it. After stating that the promise was in conflict with
the terms of the written contract, and, if honestly made, the rule for-
bidding proof of contemporaneous oral agreements to detract from the
writing applied; but, when not so made, the court said: "Cases are
not infrequent where relief against a contract reduced to writing has
been granted on the ground that its execution was procured by means
of oral promises fraudulent in the particular mentioned, however variant
from the terms of the written engagement into which they were the
means of inveigling the party (Newman v. Smith, 77 Cal. 22, 26,
[18 Pac. 791], and authorities cited; Hays v. Gloster, 88 Cal. 560 [26
Pac. 367])." Rheinganz v. Smith, 161 Cal. 362, 119 Pac. 494, Ann. Cas.
1140, involved a contract for the sale of lands by Rheinganz to Smith.
The former had given another party an option to buy the lands which
Smith knew had not expired when he induced Rheinganz to sell to him.
The option was taken up, and Rheinganz sued to cancel the contract
with Smith on the claim that, when Smith paid the earnest money of
$1,000 on the deal and received the contract of sale, he promised to can-
cel the same in case the option was taken up by the party who held it.
There was some evidence that when Smith made the promise he in-
tended to breach it, and that it was made to induce Rheinganz to enter
the contract; but as there was no averment in the complaint to that
effect the trial court was reversed, and the case remanded with direction
to allow an amendment of the pleading so as to make the fraudulent
promise testified to available as a ground for relief.

Our conclusion is that the rule excluding proof of oral representa-
tions or statements to vary or contradict a written agreement is not ap-

plicable to fraudulent oral representations whereby the one party induced the other to enter the contract, provided these are such that the other party might rely thereon.

But it does not follow that every fraudulent promissory representation will serve as basis for rescission of a contract induced thereby, any more than that every misrepresentation of existing condition does. It is always a necessary element in the rescission of a contract for fraud that the one claiming the right to rescind relied upon the truth of the representations, having no knowledge of their falsity or fraudulent character. If in a written contract for the sale of a horse the age was stated to be 10 years, it goes without saying that the buyer who knew that the contract so read when he signed, cannot rescind on the claim that he was induced to enter the agreement by the seller's falsely representing the animal to have been only 3 years of age, for conceding the misrepresentation, the contract itself informed the buyer that it was untrue. So with a fraudulent promissory representation which is plainly contradicted by the undertaking or the stipulations in the written agreement. The promisee would then know that the promise was false, or could not be kept, if what was written was to have any effect, and consequently could not rely thereon. Therefore it is not often that a fraudulent promissory representation in respect to the subject matter or the terms of a written contract, standing alone, affords ground for rescission. In Banque Franco-Egyptienne v. Brown (C. C.) 34 Fed. 162, 192, Judge Wallace says: "Promissory statements may be made in terms which imply that a certain condition of things exists at the time, and form the basis of the * * * future * * *. things. When they are of this description, if they are intentionally false, they are fraudulent, and form the basis of a right of rescission."

Under this rule, which to us seems reasonable, the court did not err when submitting the alleged promissory representation to the jury's determination. The substance of this representation was that if plaintiff would buy the farm and run it for a season or a year and if he failed to make it pay, or was dissatisfied with the result, the cash money which would be paid, and was paid, upon the execution of the contract would be refunded with interest. Defendant testified: "I told him (plaintiff) if he would farm that right and put out stock there I would buy that

farm back and pay him back what he paid for it. * * * I told him if he would go on there and stock that farm up and farm it right I would guarantee he would never lose a cent on it." Whether the promise was conditioned as claimed by plaintiff or as claimed by defendant was for the jury. Then the jury could find that in that connection defendant represented the farm to be as good, meaning of course for raising crops, as any farm in Brown county, when, in fact, the subsoil was gravel and sand, which farmers generally consider less productive than clay subsoil; also that there was 40 acres more plow land than there actually was. In that situation, the promise, no doubt, was considered by plaintiff as being based upon the representations in respect to the worth and productiveness of the farm as compared with the good farms of Brown county and the quantity thereof under cultivation. If the truth in these respects had been told, plaintiff would have known that he could not carry out the contract and pay the interest of the unpaid purchase price, taxes and expenses, to say nothing of the balance of the purchase price, and that the promise was false and fraudulent. The jury could find that there was a fraudulent promise predicated upon misrepresentations concerning the productiveness and cultivated acreage of the farm.

The court withdrew the alleged misrepresentations of the market value of the farm from the jury, ruling that the evidence received on that issue was mere trade talk, so that defendant has no cause for complaint on that feature of the case.

No point is made upon the timeliness of the offer to rescind. All the fraudulent statements were interwoven in the one conversation at which the contract was signed, and we assume defendant takes the sensible view that plaintiff did not need to take steps to rescind until he knew the extent of the falsity of the representations upon which he relied.

Judgment affirmed.