[Sac. No. 2912. In Bank.—October 6, 1921.]

PACIFIC PORTLAND CEMENT COMPANY, CONSOLIDATED (a Corporation), Appellant, v. PLACER COUNTY LAND COMPANY (a Corporation), Respondent.

[1] VENDOR AND VENDEE—FAILURE OF TITLE—NONLIABILITY FOR DAMAGES—NOTICE.—In an action to foreclose a purchase money mortgage, the defendant cannot recover damages for failure of title to a portion of the land, in the absence of fraud, although the conveyance to him included this portion of the land, where the grantor knew that it did not have title thereto, or at least that a railroad company was occupying and claiming it adversely, and the grantee was aware that at least some portion of this land was claimed and occupied by the railroad as a right of way.

[2] ID.—GRANT BY CONGRESS—ADVERSE CLAIM—NOTICE.—An act of Congress under which land is claimed by a railroad company, being a public statute, is constructive notice to both parties to a conveyance of the land of the adverse claim of the railroad company.

[3] Id.—Examination of Title — Mistake — Rescission.—It is well settled that, in the absence of fraud or an agreement, express or implied, for a good or particular title, a purchaser of land buys at his peril and is bound to look to the title and competency of the vendor. Therefore a purchaser cannot rescind on the ground that he was mistaken as to his vendor's title. But where both parties are under a mistake as to the vendor's title, equity will relieve the purchaser from the contract.

[4] Id.—Expression of Opinions.—Mere expressions of opinion as to the sufficiency of the title, when the means of information are equally accessible to both parties, or the same facts are within the knowledge of both parties, and when no confidential relation exists between them, do not constitute fraud or deceit on the part of the vendor. It is a mere statement of opinion, and does not justify the party to whom the statement is made in relying thereon.

APPEAL from a judgment of the Superior Court of Placer County. J. E. Prewett, Judge. Reversed.

The facts are stated in the opinion of the court.

Pillsbury, Madison & Sutro, A. E. Roth and Marshall P. Madison for Appellant.

Geo. W. Hamilton for Respondent.

SLOANE, J.—This action was begun by plaintiff to foreclose a purchase money mortgage on land conveyed by plaintiff to defendant. There was a cross-complaint by defendant to recover damages from failure of title to a portion of the land. Judgment was for the defendant, and the plaintiff appeals.

The only matters in dispute arise under the averments of the cross-complaint that the agreement with and deed to the defendant called for a tract containing twenty-two and one-half acres, whereas plaintiff only had title to sixteen acres of the tract conveyed. The deed to defendant described the land by courses and distances as follows: "Beginning at the northeast corner of the west half of the northeast quarter of section ten in township twelve, north, range eight east, Mount Diablo base and meridian, and running thence south

---

4. Misstatement as to title to real property sold as matter of opinion, notes, 28 L. R. A. (N. S.) 206; 39 L. R. A. (N. S.) 1143.

along the line between the east half and the west half of the northeast quarter of section ten a distance of 1320 feet to a stake; thence at right angles west a distance of 802 feet to the center line of the Central Pacific railway track; thence in a northerly direction along said center line of said railroad track to its intersection with the north line of said section ten; thence east along the north line of said section 10 a distance of 669 feet to the place of beginning; being a fractional part of the north half of the west half of the northeast quarter of said section 10." No reference is made in the deed to the acreage of the tract, but it is in evidence that a computation of the area inclosed within the described boundaries shows that it comprises twenty-two and one-half acres.

It is conceded that the Southern Pacific Company, as successor to the Central Pacific Railway Company, at all times affected by these proceedings, owned a strip of the above-described premises two hundred feet in width along the entire westerly line, described as the "center line of the Central Pacific Railway track," and to the east thereof, comprising about six acres, and to which strip the plaintiff at no time had any title. For many years prior to the conveyance in question the railway companies had occupied the westerly part of this strip as a right of way for their tracks and had maintained a fence on the easterly line between such strip and the remaining premises covered by plaintiff's deed.

It is from the failure to obtain title to this strip of land under the deed from plaintiff to defendant that the controversy on this appeal arises.

The trial court, after finding the facts as above stated, further found that the plaintiff and its agents had knowledge of "the existence of the tracks and fence lines constructed and maintained over and across such mortgaged premises," and were advised and informed of the fact that all the right, title, or interest or estate that they or either of them had in or to said strip was "subject and subordinate to the rights, claims, and title of the railway company," but that neither plaintiff nor its agents advised or informed the defendant thereof.

This finding is followed immediately by the further inconsistent and apparently irreconcilable finding that neither

the plaintiff nor the defendant "had knowledge or were otherwise informed or advised" of the fact of ownership and right of possession by the railway company of the strip or parcel of land hereinbefore described.

As the evidence indisputably shows that all of the parties to this action knew and had known for years that the railway company was maintaining its tracks upon this strip of land and was maintaining the fence hereinbefore referred to, and as the deed itself carries the west line of the land conveyed to and along the center of a railway track, the only explanation for the finding that neither plaintiff nor defendant knew of the railway's ownership or right of possession, is that the court intended to find that neither of them was informed of the nature or validity of the railway company's right or title. That such was the situation is a fair inference from the testimony in the case. It is clearly evident from the testimony of the agents of defendant who conducted the negotiations for the purchase of this land that they knew of the occupancy of this strip or some portion of it by the railway company, and that it was claimed and used by said company for a right of way and that the railway company was maintaining the fence along the easterly border of this strip, thus separating it from the main part of the tract. Before the purchase was consummated defendant was furnished with an abstract of title to the entire tract, and in one of the transfers set out in the abstract there was a reservation "saving and excepting the right of way of the said Central Pacific Railroad Company." The call in each of the several conveyances for the "center line of the Central Pacific Railroad track," as one of the boundaries, must have served as notice that the railway company was claiming and occupying some portion of the tract as a right of way. Defendant's agents admitted that they had previous knowledge of litigation between the railroad and other land owners over this two hundred foot right of way extending across adjacent lands. This two hundred foot strip is claimed by the railway under an early congressional grant. The title of the company had, it was claimed, in one instance at least, been successfully contested, and defendant's agent and representative testified to knowledge that similar litigation had occurred on other sec-

tions of the railway line in that neighborhood and "that sometimes the railroad company wins and sometimes loses."

That defendant had notice that some portion of the tract it was bargaining for was occupied and claimed as a railroad right of way is beyond question. That such claim extended from the railway track to the line of fence was suggestively apparent.

The only reasonable conclusion is that both parties to the transaction understood that the disputed strip was included in the conveyance, as it had been in the several previous deeds in the chain of title, to pass to the grantee any interest that might be maintained against the railroad company, but with full knowledge of the railway's possession and subject to any valid claim it might have.

[1] The theory upon which the trial court made its findings in favor of defendant, namely, that the inclusion of the entire acreage in this conveyance was the result of the mutual belief of both parties to the transaction that plaintiff had an undisputed title to this right of way strip clearly cannot be maintained, and upon no other theory presented by the facts or the findings can the defendant defeat plaintiff's action or recover on its cross-complaint. Fraud is not alleged in the pleadings, and the defendant at least had sufficient notice of the railroad's right of way to put it on inquiry. Indeed, it knew of the adverse claim to some portion of this tract, and the duty was imposed upon it to make investigation as to the extent of the railroad's rights.

That the deed to defendant calls for this two hundred foot strip is undisputed, but it is equally clear that the grantor knew that it did not have title thereto, or at least that the railroad company was occupying and claiming it adversely, and the grantee was aware that at least some portion of the strip was claimed and occupied by the railroad as a right of way. [2] Even the act of Congress under which the two hundred feet of land claimed by the railway company was granted, being a public statute, was constructive notice to both parties of this adverse claim. (*Central Pac. Ry. Co.* v. *Droge*, 171 Cal. 32, 42, [151 Pac. 663].)

Eliminating the findings of mutual mistake, and any question of fraudulent misrepresentation, or express covenants

of title, and the application of the rule of *caveat emptor* becomes too plain to require argument or authority.

[3] The general rule applicable is stated in 39 Cyc., page 1252, as follows: "It is well settled that, in the absence of fraud or an agreement, express or implied, for a good or particular title, a purchaser of land buys at his peril, and is bound to look to the title and competency of the vendor. Therefore a purchaser cannot rescind on the ground that he was mistaken as to his vendor's title. But where both parties·are under a mistake as to the vendor's title, equity will relieve the purchaser from the contract."

The most that can be said in support of defendant's case here is that the plaintiff, its vendor, represented that it had title to this disputed strip; but in the face of the fact that both parties to the transaction had knowledge of the adverse claim and possession of the railroad company, this representation becomes a mere statement of opinion as to the legal effect of the adverse claim.

[4] "Mere expressions of opinion as to the sufficiency of the title, when the means of information are equally accessible to both parties, or the same facts are within the knowledge of both parties, and when no confidential relation exists between them, do not constitute fraud or deceit upon the part of the vendor. It is a mere statement of opinion, and does not justify the party to whom the statement is made in relying thereon." (*Choate* v. *Hyde*, 129 Cal. 580, [62 Pac. 118]; *Nounnan* v. *Sutter County Land Co.*, 81 Cal. 1, [6 L. R. A. 219, 22 Pac. 515]; *Rheingans* v. *Smith*, 161 Cal. 362, [Ann. Cas. 1913B, 1140, 119 Pac. 494].)

If defendant was misled in entering into this purchase it was not because of any mistake as to the acreage of the tract. It is not disputed that the deed purported to convey the entire twenty-two and one-half acres bargained for. The mistake, if any, was as to the title to the strip included in the railroad's right of way, and, as has been pointed out, both parties were in possession of the facts which showed that plaintiff's claim of title was at least doubtful and its representation of ownership merely a matter of opinion.

The undisputed facts in this case clearly indicate that the conveyances of this strip by the owners of record through a considerable chain of title were accepted with knowledge of the adverse claim of the railroad, and the defendant here

in its turn took a sporting chance, which it confessedly thought at the time of the purchase was good, that the railroad's title could be defeated. Under such conditions it cannot avoid its liability for the purchase price.

The judgment is reversed.

Lennon, J., Wilbur, J., Lawlor, J., and Angellotti, C. J., concurred.