[Civ. No. 9121. Second Appellate District, Division Two.—February 21, 1936.]

HARRY P. JACOBSON et al., Respondents, v. NELLA WILDE MEAD, as Executrix, etc., et al., Appellants.

Lucien Gray and Jess E. Stephens for Appellants.

Benjamin & Benjamin and Aaron Elmore for Respondents.

GOULD, J., *pro tem.*—When plaintiffs in January of 1927 signed an agreement to purchase a city lot they demanded that there be inserted in the contract, in addition to the usual street improvement provisions therein contained, a further covenant that vendor would plant trees in the parkway along the street upon which the lot faced. This insertion was made by vendor's agent. A few days later, upon making the balance of the down payment of $1340, plaintiffs again requested confirmation of the agreement as to the planting of trees and other improvements, and the vendor's agent gave plaintiffs a letter signed by himself as agent to the effect that the seller would make the improvements specified. Dissatisfied with this memorandum, signed only by the agent, plaintiffs again requested and secured a statement signed by the vendor himself agreeing ''to install at my own expense'' certain street improvements ''and to plant the parking to trees on Griffith Park Blvd.''. No trees were planted, and in June, 1932, plaintiffs served notice of rescission of the contract to purchase upon the grounds of failure of consideration and false and fraudulent representations inducing the contract of sale. When plain-

tiff's demand for return of the money they had paid and for cancellation of the note and trust deed they had executed for the unpaid balance of the purchase price was refused, they filed the within action. The original vendor being deceased, the suit was brought against defendants as personal representatives of and successors in interest to said vendor. Judgment went for plaintiffs and defendants appeal.

■ The original vendor died a few months after plaintiffs made their contract to purchase. The suit to rescind, commenced more than four years after his death, was prosecuted against his personal representatives. There was no allegation in the complaint and no showing in the evidence that a claim was presented against the estate of the deceased within the period allowed by law, or at all, and the period for presentation of claims had expired long before the within action was commenced. Failure to file a contingent claim against the estate is fatal to the prosecution of this action. (Sec. 707, Probate Code.) As stated in *Verdier* v. *Roach*, 96 Cal. 467, at 479 [31 Pac. 554]: "Timely notice of all claims which may prejudicially affect an estate should be given to the administrator, so that he may have an opportunity to investigate their merits and to contest them, if advisable, before the evidence of their invalidity shall be lost. That they should be forever barred if not presented within the time prescribed by law is surely no greater hardship than that absolute claims should be so barred." The cited case discusses at length the whole matter of contingent claims, and compels the conclusion that such a claim should have been filed in the estate of the deceased vendor herein as an indispensable precedent to bringing the within action.

The judgment is reversed.

CRAIL, P. J.—We have had a world of trouble in reaching a decision in this case, and I wish to state my reasons for a reversal of the judgment. On February 8, 1927, William Mead, now deceased, the defendants' testator, entered into a written contract with the plaintiffs whereby they purchased a vacant lot at an agreed purchase price of $8,000, the purchasers paying $1600 on the purchase price. At the request of the plaintiffs, the decedent added the following clause to the written contract: "I agree to install at my own expense in the street accessible to said lot a sanitary sewer, city water,

gas, electric and telephone wires in underground conduit with connection to curb, cement curb, cement walks on both sides of the street, concrete pavement electroliers, and to plant the parking to trees on Griffith Park Blvd.'' On March 3, 1927, which was more than five years prior to the commencement of this action, Mead and his wife conveyed the lot to the plaintiffs by grant deed and the plaintiffs executed their note for $6,400 secured by a trust deed on the lot. All the improvements above indicated were thereafter installed at large expense by the decedent except the trees, which were not planted. The planting of the trees would have cost a nominal sum, but on November 23, 1927, William Mead died. Thereafter his estate, including the above note and trust deed, came into the possession of the defendants, the representatives of the estate. During the intervening years plaintiffs listed the lot for sale at various times and endeavored to sell it. They never improved the lot and during the ensuing five years paid the principal down to $3,800. In June, 1932, they served notice of rescission and brought an action in two counts: (one) for rescission for failure of consideration; (two) for rescission of fraud, i. e., that the decedent obtained the note and trust deed upon the promise that he would plant the trees and said promise was false and made at the time it was made without any intention to perform it. The action was against the representatives of the decedent's estate. The answer of the defendants denied the allegations of the complaint and as a separate defense alleged that plaintiffs ought not to maintain their action because of the five years which had elapsed since the contract was entered into and other causes.

This is an inartistic pleading of the statute of limitations, but under the circumstances of this case we deem it sufficient for the reason that this was a claim against the representatives of a decedent's estate and the statute itself provides that no claim which is barred by the statute of limitations shall be allowed or approved (1) by the executor or (2) by the judge. (Probate Code, sec. 708.) In the case of *Fontana Land Co.* v. *Laughlin*, 199 Cal. 625 [250 Pac. 669, 48 A. L. R. 509], the court said: ''The power to nullify acts of the legislature prescribing a limitation upon the time within which actions may be commenced is not a judicial prerogative. Statutes of limitations have become rules of property. They are vital to the welfare of society and are favored by the law.

(*Nichols* v. *Randall,* 136 Cal. 426 [69 Pac. 26] ; *Shain* v. *Sresovich,* 104 Cal. 402 [38 Pac. 51].) They are to be viewed as statutes of repose, and as such constitute meritorious defenses. (*Lilly-Brackett Co.* v. *Sonnemann,* 157 Cal. 192 [106 Pac. 715, 21 Ann. Cas. 1279].) . . . In *Reay* v. *Heazelton,* 128 Cal. 335, 338 [60 Pac. 977, 978], the above-cited section was construed by this court, and it was there said: 'As between parties acting in their own right, the plea of the statute of limitations is unquestionably a personal privilege which may be waived. But an executor or administrator, acting for others, and in a trust capacity, is not vested with this privilege, and may not waive such a defense. By section 1499 of the Code of Civil Procedure the personal representative, as well as the judge of the superior court, is forbidden to allow any claim which is barred by the statute of limitations. It would be a most unwarranted evasion of this mandatory provision to permit an executor or administrator by his failure to invoke the plea to suffer judgment upon a claim which, when presented to him, he was bound by law to reject because of the bar of the statute. In *Vrooman* v. *Li Po Tai,* 113 Cal. 302 [45 Pac. 470], it was held that the administrator, by appearing and answering, could not waive the objection that the claim in suit was barred by the statute; and in *Boyce* v. *Fisk,* 110 Cal. 107 [42 Pac. 473], it is declared that an administrator will not be permitted to waive the statute of limitations upon a claim which is barred. To like effect is *Butler* v. *Johnson,* 111 N. Y. 204, 212 [18 N. E. 643].' . . . The personal privilege of waiving the statute of limitations expired with the decedent and was not transmitted to the administrator or any other person to be exercised for the benefit of barred claimants to the prejudice of creditors. . . . The refusal to allow barred claims is more than a general policy of the law; it is the positive command of the statute.'' As is often said in the probate court the law itself pleads the bar of the statute of limitations against claims against the estates of decedents. (See cases cited in 11A Cal. Jur. 785, note 1.)

The trial court rendered judgment that the note and trust deed be cancelled, and in addition thereto a money judgment against the defendants for $6,378, with interest and costs.

■ While an action to recover back money paid on a written contract which thereafter is rescinded is based upon contract, it is not based upon the written contract but upon

a promise implied by law to pay the money to the plaintiff as on money had and received. "Basis of Action on Rescinded Contract.—An action to recover back money paid under a contract as money had and received is not based upon the contract, but upon the proposition that the contract has been rescinded, and, being nonexistent, the defendant has money which was paid to him without consideration, and, therefore, has money in his hands which belongs to the plaintiff, and hence upon an implied contract and promise upon his part to repay the same." (17 Cal. Jur. 615, and cases collected under note 2.) Such an action must be brought within two years. (See cases collected under 16 Cal. Jur. 468, note 6.) The cause of action for the return of the purchase money because of the failure of consideration was barred by the statute of limitations.

 In order to bring their second count within the time limited by the statute of limitations it was necessary for the plaintiffs to allege not only that the promise to plant the trees was false and fraudulent for the reason that the decedent had no intention *at the time he made the promise* of performing it, but also that this fraud was not discovered by the plaintiffs until such date as would bring the action within the time limited by the statute of limitations. These allegations and the proof thereof were essential—*sine qua non.*

In answer to the defendants' contention on appeal that there was no evidence that the decedent at the time he entered into the promise intended not to perform it, the plaintiffs fail to marshal any evidence before us but say: "that he [plaintiff] complained of the failure to plant trees several months after the promise; *that he was promised that trees would be put in shortly;* that he complained persistently [to decedent's representatives] each time a quarterly payment was made; that he was 'stalled' [by decedent's representatives] and not told until March, 1932, definitely that there would be no trees." While it is said in some of the cases that evidence of subsequent conduct and speech of the promisor is competent in so far as it may throw light on his original intention, it is obvious that conduct of the decedent's representatives after his death would not be competent, would throw no light on the original intention of the decedent at the time he entered into the contract. There was absolutely no showing in the evidence that after the contract was entered into the decedent during his

lifetime evaded his promise or refused to perform it; on the contrary the evidence shows unerringly that he planned to perform it. All the other obligations of the testator were punctiliously performed. Even the brief of plaintiffs admits that prior to the testator's death the plaintiffs were promised that the trees would be put in shortly. But the testator died. The only evidence which could possibly be claimed as supporting the finding that Mead did not intend to perform the promise at the time it was made is the evidence that the promise was not thereafter performed. The law is thoroughly settled that mere failure to carry out a promise does not prove fraud in the making of it. (*Brison* v. *Brison,* 75 Cal. 525 [17 Pac. 689, 7 Am. St. Rep. 189]; *Langley* v. *Rodriguez,* 122 Cal. 580 [55 Pac. 406, 68 Am. St. Rep. 70]; *Tisdale* v. *Bryant,* 38 Cal. App. 750, 757 [177 Pac. 510].) William Mead died eight or nine months after the making of the agreement; not a word of evidence was offered or admitted regarding his speech or conduct during the intervening period.

The decedent died four and one-half years prior to the commencement of the action. At the time of the death of decedent the evidence of fraud, if any, was all made. This evidence was all known to the plaintiffs and it cannot be reasonably contended by the plaintiffs four and one-half years later, after there had been a world-wide depression and the value of the vacant lot had shrunk to a mere fraction of its former value, that for the first time they discovered the fraud. There is no substantial evidence in the record to sustain such a finding.

Furthermore, both counts of the plaintiffs' complaint are wholly insufficient to state a cause of action against the representatives of decedent's estate based upon an implied contract to return money after rescission, for the reason that neither of them alleges that a claim for the sum of $6,378, or any other sum, had been presented to or filed against the estate of Mead prior to the commencement of the action. (Probate Code, sec. 707, and cases collected under 11A Cal. Jur. 728.) The complaint in so far as it was for a money judgment is obviously deficient in an essential allegation which plaintiffs cannot supply and attention to which may be raised at any time.

Wood, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 17, 1936, and the following opinion then rendered thereon:

THE COURT.— ■ The plaintiffs contend that we should have made it appear more clearly in the original opinion that it was not necessary to file a claim against the estate of William Mead, deceased, in order to obtain a money judgment against Nella Wilde Mead personally. We assume that this is so apparent that it needs no statement by us, but if we make such statement now, we should also say that Nella Wilde Mead was not a party to the contract which the plaintiffs seek to rescind. Furthermore, there was no allegation in the complaint that any of the moneys which were sought to be recovered were paid by plaintiffs to Nella Mead in her personal capacity; on the contrary, both the allegation and the findings are that the money was paid by plaintiffs ''to William Mead and to defendant Nella Wilde Mead, as administratrix of his estate, etc.''

■ Plaintiffs contend also that the action for a money judgment was not barred by the statute of limitations as to the moneys paid within two years prior to the commencement of the action. The trouble with this contention is that the judgment does not segregate those moneys which were paid within the two-year period and those paid before that period. In this connection it should also be kept in mind that plaintiffs are seeking to rescind a contract made with them by William Mead during his lifetime and such rescission is attempted 5½ years after the contract was made, February 8, 1927. Before the plaintiffs may recover for moneys paid upon the trust deed note, they must first successfully establish their right to a rescission of the original contract.

■ Plaintiffs also contend that it is not necessary to file a claim against the estate for moneys paid after William Mead's death. In a situation such as here presented, where money is paid to a representative of the estate upon a contract which is rescinded and therefore void, such money is no longer held as estate funds and the liability, if any, of the representative, being upon an implied promise to pay, is personal. While it is true that it is not necessary to file a claim for such funds against the estate of decedent, it is also true that an

action to recover such funds should properly be brought, not against the representative of the estate as such, but against him personally. (See cases collected under 11B Cal. Jur. 286, secs. 868, 869, 872, 873.

It would not be necessary, of course, to file a claim against the estate in order to bring a quiet title action against the trust deed or to enforce a lien upon specific property if such lien exists, but plaintiffs herein are seeking a money judgment, the effect of which would be to deplete the general assets of the estate. The judgment, even as to the nonpecuniary part of it, must be reversed for the reasons stated in the original opinion.

Petition for rehearing denied.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 20, 1936.